| STATE OF MINNESOTA | COUNTY OF SCOTT |
|---|---|
| DISTRICT COURT | FIRST JUDICIAL DISTRICT |

Court File No.: _____

Case Type:   Employment

Michael Mahaney,

        Plaintiff,   **SUMMONS**

   v.

Condair, Inc.

        Defendant.

_____

TO:   Condair Inc., c/o The Company Corporation, 251 Little Falls Drive, Wilmington, DE 19808

     1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

     2. **YOU MUST REPLY WITHIN 60 DAYS TO PROTECT YOUR RIGHTS**.   You must give or mail to the person who signed this summons **a written response** called an Answer within 60 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

**GILBERT ALDEN PLLC**

Charlie R. Alden, Reg. No. 0389896

2801 Cliff Rd E

Suite 200

Burnsville, MN 55337

612-990-2484 l Office & Cell

612-806-0585 l Fax

**EXHIBIT A**

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 60 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated:     August 10, 2020

By: /s/ Charlie R. Alden_____
Charlie R. Alden, Reg. No. 0389896
Gilbert Alden PLLC
2801 Cliff Rd E
Suite 200
Burnsville, MN 55337
charlie@gilbertalden.com
612-990-2484 l Office & Cell
612-806-0585 l Fax

**ATTORNEYS FOR PLAINTIFF**

## **ACKNOWLEDGMENT**

That costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 10th day of August, 2020

/s/ Charlie R. Alden
Charlie R. Alden

| | |
|---|---|
| STATE OF MINNESOTA | COUNTY OF SCOTT |
| DISTRICT COURT | FIRST JUDICIAL DISTRICT |

Court File No.: _____
Case Type:   Employment

Michael Mahaney,

        Plaintiff,

   v.

Condair, Inc.

        Defendant.

**COMPLAINT**
**JURY TRIAL DEMANDED**

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Michael Mahaney ("Mahaney") is a natural person who resides in Scott County, Minnesota.

2. Defendant Condair, Inc. is a business entity incorporated in the state of Delaware.

3. Defendant's location of employment for Plaintiff is out of Sturtevant, Wisconsin.

4. At all times relevant hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of 29 U.S.C. § 2611.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this matter and venue is appropriate in this district because the cause of action arose in this county.

## FACTUAL BACKGROUND

6.     Plaintiff Michael Mahaney was born on March 2, 1956 and is currently 64 years old.

7.     Mahaney resides in Prior Lake, MN and resided there during his employment with Condair.

8.     Mahaney was, at all material times, an employee of Condair and a covered employee within the meaning of the Fair Labor Standards Act ("FLSA").

9.     Condair is an international manufacturer of commercial and industrial humidification and evaporative cooling products. Condair also installs and services its own products.

10.    Mahaney began working in the humidification industry in the late 1990s as a subcontractor. Since then, Mahaney has never left his company and continued working through years of buyouts and take overs by Husson Inc., ML Service, Nortec Inc., and Condair Inc.

11.    In approximately August of 2009, Mahaney was kept on by Condair after it purchased Mahaney's previous employer.

12. After the buyout, Mahaney's new role was On-site Humidification Systems Technician. His position was based out of the Sturtevant, Wisconsin Condair office, but Mahaney was required to travel throughout the United States for installations and service work and spent little time at the Sturtevant office.

13. In July of 2015, Mahaney and the other similarly-situated technicians were given the new titles of Field Service Managers. The purpose of the title change was to give Mahaney and his colleagues more credibility with Condair's clients when they would travel to job sites, because customers would be dealing with "managers" as opposed to technicians.

14. At least one of the technicians given the same "manager" label as Mahaney, had only been with Condair for a few months before his title was changed to "manager" while he retained his previous responsibilities as a technician.

15. Under Mahaney's new title, his job description remained to install, maintain, and repair humidification and water treatment systems throughout the United States. Mahaney was required to travel roughly 80% of the time.

16. Mahaney worked long hours and almost regularly worked more than 40 hours per week.

17. As Field Service Manager, Mahaney did not manage a department, or subdivision of Condair; customarily and regularly direct the work of at least two

or more full-time employees; or have the authority to hire or fire other employees or have any say in the hiring and firing decisions of employees.

18. In his position as Field Service Manager, Mahaney did not fall under any exemption to the Fair Labor Standards Act.

19. Condair failed to pay Mahaney at the required overtime rate of 1.5 for the hours he worked over 40 In a week.

20. Mahaney's Employment Agreement, contains a compensatory hour plan that states any hours worked over 40 in one week were to be paid at either a multiple of 1.5 for vacation time or a multiple of 1 for payment.

21. Condair breached the Employment Agreement and failed to pay Mahaney at a multiple of 1 for payment of his hours over 40 in a work week or to give him vacation time at a multiple of 1.5.

22. Throughout Mahaney's employment with Condair, Condair failed to accurately record the basis on which Mahaney's wages were paid. Through the combination of timesheets and paystubs created by Condair, it is impossible to ascertain how Condair calculated Mahaney's wages.

23. Condair also changed the way it calculated wages frequently during Mahaney's employment, adding to the confusion.

24. Condair breached their duty to adequately and accurately calculate and keep records that would allow Mahaney to gain an understanding of the basis at which he is paid.

25. Due to Condair's inaccurate and inconsistent paystubs, Mahaney was not paid what is owed to him under the Employment Agreement, nor what is required under the FLSA.

26. Mahaney spent over 10 years working for Condair and became one of their most senior technicians. As Mahaney began to age, Condair began treating him differently.

27. In early 2017, Mahaney began noticing that Condair discriminated against employees and potential employees due to their age, including himself.

28. Mark Skeens, one of Mahaney's acquaintances who was also similar in age, was interested in applying for a position at Condair in approximately February of 2017. Mahaney assisted Mark in getting connected with his supervisor Andy Christianson, because Christianson had the authority to hire and fire employees, and Mahaney did not.

29. During the interview process, Andy Christianson repeatedly asked how old Mark Skeens was, to the point where Andy asked Mahaney to ask Mark Skeens how old he was because Mark would not tell Christianson because he did not think it was relevant to how well he could do the job he was interviewing for.

5

30. Mark Skeens was never hired by Condair, even though he was more qualified for the position than other current technicians.

31. In early October of 2019, Mahaney emailed Tim Holland, Mahaney's immediate supervisor and the Lead Technician, an FYI that he would be putting in for vacation the week of Thanksgiving. Mahaney did not receive confirmation that he could take this time off after numerous follow up emails to multiple employees at Condair. These vacation requests were later held against Mahaney by Condair's Human Resource Manager, Kate O'Connor.

32. In approximately November of 2019, Tim Holland informed Mahaney that Condair was not hiring any more field technicians because they had too many at the time. This conversation occurred after Mark Skeens inquired again about being hired by Condair.

33. In early December of 2019, Mahaney was informed by several people including a field technician and an office project manager that Ryan Green, a previous field technician with Condair, had contacted Condair to communicate his interest in returning to Condair. Mahaney was told by the Sturtevant Condair office that Ryan Green would be brought back to do direct room systems, which is Mahaney's primary responsibility. Ryan Green is in his 30s.

34. On December 13, 2019, Mahaney received a very positive employee evaluation from Tim Holland and a complimentary letter and notification of a

raise in base salary from Andre Crites, the Director of Service Operations at Condair.

35. Mahaney would come to find out that his pay raise was actually less than other similarly-situated employees. He learned this because Condair made a clerical error and accidentally sent him someone else's pay raise letter. Mahaney phoned Andre Crites to ask if he had done something wrong or what the reasoning was for not receiving as much of a raise as the other employee.

36. Mahaney was merely asking for this information because he was not expecting or asking for a raise, but wanted to make sure he was not falling behind the other technicians' salaries. This was also later held against him in an attempt by Condair to create cause for terminating Mahaney. At no point in time did Mahaney request a raise - he merely questioned why he did not receive as much of a raise as another similarly-situated employee when he had contributed as much or more to the company than other employees.

37. On the same day as the evaluations and raise, Mahaney left for California to a large installation and two service visits. The installation was completed ahead of schedule but some problems were discovered with the new equipment shipped from Denmark, which prevented Mahaney from finishing before Friday, December 20, 2019. This forced Mahaney to stay over the weekend until the new materials could be shipped.

38. Condair later claimed that Mahaney was not authorized to go to the California installation. But this was another attempt by Condair to create cause to terminate Mahaney. Mahaney was authorized to complete these projects, as is evidenced through the communications between Mahaney and his supervisors and his scheduler. In reality, Mahaney has never had authority to decide what projects he could do and when. Mahaney would not have travelled across the country to California unless authorized.

39. While Mahaney was completing the projects on approximately December 19, 2020, Andre Crites called Mahaney to discuss an alleged complaint against Mahaney by a client. The client was a Mormon temple in Idaho where Mahaney had done a simple installation. Andre claimed that Mahaney was swearing on the job site and upsetting the client. Mahaney had never heard of this alleged complaint until approximately December 19, 2020 and questioned whether it was regarding him or not or that it was truthful. When Mahaney was working the install, he was well aware of Mormon culture and was very respectful and did not swear.

40. After the phone call with Andre, Mahaney looked back at his records and realized he had completed the Mormon Temple installation over a year and a half ago. He asked Andre why he had brought up the alleged complaint nearly 18 months after it was allegedly received. Mahaney emailed Andre to inform him he

had not been to the Mormon Temple for over a year and a half and that he does not swear in general. Andre answered his email back saying "It's been too long, it could have been a different site. Disregard. It's also why I never formally mentioned it to you."

41. Andre Crites brought up this alleged complaint in an attempt to paper Mahaney's personnel file with negative information. In reality, the complaint was not truthful or was about a different Condair employee that, more recently, installed other equipment at the Mormon Temple. There is no other reason Andre would bring up this complaint, a year and a half later, except in an attempt to paper Mahaney's personnel file with negative information.

42. With respect to the California job, after the new parts were overnighted and arrived the weekend of December 21 and 22, 2019, Mahaney was able to finish the project by working December 23 and 24, 2019. At this time, Mahaney was supposed to do more work in California on December 26, 2019. Under Condair's policy, Mahaney could either fly home on the 24th and fly back out on the 26th, or get a hotel and be reimbursed.

43. Mahaney was supposed to work on two projects starting December 26, 2019. The first was canceled because Condair was trying to save money and have Mahaney complete the project ahead of the client's schedule while Mahaney was in the area. The client ended up postponing this project when the client found out

9

Condair wanted to do it ahead of schedule. The second project Condair canceled without giving Mahaney a reason.

44.     Mahaney brought his golden retriever on this trip because after the projects his dog was to have surgery in Idaho from a world-renowned veterinarian. Condair knew this ahead of time.

45.     On December 26, 2019, since Condair did not have any more projects for Mahaney, Mahaney departed California en-route to Idaho for his dog's surgery.

46.     On December 30, 2019, Mahaney submitted his reimbursement report to Tim Holland for his time in California. Normally, Mahaney would get a responsive answer within a few hours to his report, either accepting his report or asking for clarification on some of his requests. Holland never responded to Mahaney after repeated attempts to contact him.

47.     On Mahaney's way home from Idaho, he offered to stop, at no cost to Condair or the client, at a job site to lay out the system. Mahaney knew the client very well and was going to do this to save Condair money and as a favor to the client. Condair refused to allow Mahaney to stop and told the client that they would need to follow up with Condair's office to schedule an appointment with a technician.

48. On approximately January 2, 2020, Andre Crites called Mahaney accusing him of requesting reimbursement for a hotel stay and other expenditures during the time period of December 23 and 24, 2019 that were unauthorized.

49. This explains why Tim Holland never responded to Mahaney. Andre claimed that Mahaney was not working and that he did not have proper authorization. Mahaney informed Andre that he did work on those days and that he could check up with Mahaney's scheduler if he did not believe him. Andre checked with Mahaney's scheduler and was informed that Mahaney did in fact work those days.

50. On January 7, 2020, Holland called Mahaney to inform him he was terminated. Mahaney was not given an official reason for his termination. On the Minnesota Unemployment Insurance website, Condair did not give a reason for discharge.

51. During Mahaney's phone call with Holland, Holland said that Mahaney had asked for more money and that he had gone on a work trip without the proper authorization, neither of which are true.

52. After Mahaney was terminated, he reached out to a few Condair employees to figure out why he was terminated. None of them could explain it, other than to create a spot for Ryan Green, who took Mahaney's position a few weeks later. The

11

employees he spoke to also referred to Mahaney as being part of the "old regime" and how the employee was sure "I'll be pushed out next. I can feel it".

## CAUSES OF ACTION

### COUNT I – FLSA CLAIM FOR UNPAID OVERTIME AND FAILURE TO KEEP RECORDS

53. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

54. The FLSA requires covered, non-exempt employees to receive overtime pay at time and a half the regular rate of pay for all hours worked over forty hours in a week.

55. Plaintiff Mahaney did not receive overtime pay at time and a half as is required under the FLSA, and Condair failed to keep accurate records to allow Mahaney to calculate his wages.

56. Condair knowingly and willfully violated the overtime provisions and the record keeping provisions of the FLSA

57. Plaintiff suffered damages as a direct result of Condair's illegal actions

58. Condair is liable to Mahaney in the amount of his unpaid overtime compensation and an additional equal amount in liquidated damages, pre-judgment and post-judgment interest, attorney's fees and costs.

59. As a result of Condair's actions, Plaintiff has been damaged in an amount in excess of $50,000, to be determined with certainty at trial.

## COUNT II – BREACH OF CONTRACT (IN THE ALTERNATIVE)

60. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

61. Per the Employment Agreement between Mahaney and Condair, Condair was required to compensate Mahaney for any hours he worked over 40 in a week by either paying him at a multiple of 1 or by giving him time off at a multiple of 1.5.

62. Condair failed to follow the compensatory hour plan set forth in the Employment Agreement and materially breached the contract between the parties.

63. Plaintiff Mahaney has been damaged due to Condair's failure in an amount in excess of $50,000, to be determined with certainty at trial.

## COUNT III – DISCRIMINATION IN VIOLATION OF MINN. STAT. § 363A.08.

64. Plaintiff incorporates the foregoing paragraphs by reference as though fully stated herein.

65. Minn. Stat. § 363A.08, subd. 2 prohibits an employer from discharging an employee based upon his age.

66. Mahaney was repeatedly asked when he was going to retire, questioned on simple expense reports, and was eventually terminated due to his age.

67. Through Condair's actions, it has created a constellation of evidence that creates a mosaic of an age discrimination claim.

68. As a result of these actions, Mahaney has suffered lost salary benefits, mental and emotional pain, and other compensatory damages in an amount in excess of $50,000, to be determined with certainty at trial.

WHEREFORE, Plaintiff Michael Mahaney requests an order from the Court making the following findings and providing the following relief:

1. Defendant failed to follow the FLSA's rules on overtime pay, causing Mahaney damages to be determined at trial.

2. Defendant failed to follow the FLSA's rules on recordkeeping, causing Mahaney damages to be determined at trial.

3. Defendant breached the Employment Agreement, an enforceable contract, with Plaintiff, causing Mahaney damages to be determined at trial.

4. Defendant permitted discrimination to exist in violation of the Minnesota Human Rights Act.

5.  Plaintiff is entitled to his costs, attorneys fees, and other penalties available by law, including liquidated damages under the FLSA, plus back-pay, front pay, and pre and post judgment interest.

6.  Any other relief afforded by law.

Dated: August 10, 2020    **GILBERT ALDEN PPLC**

By: /s/ Charlie R. Alden
 Charlie R. Alden, Reg. No. 0389896
 2801 Cliff Rd E
 Suite 200
 Burnsville, MN 55337
 Charlie@GilbertAlden.com
 612-990-2484 | Office & Cell
 612-806-0585 | Fax

**ATTORNEYS FOR PLAINTIFFS**

**ACKNOWLEDGMENT**

That costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

Dated this 10th day of August, 2020

 /s/ Charlie R. Alden
 Charlie R. Alden

# Affidavit of Process Server

IN THE FIRST JUDICIAL DISTRICT COURT, SCOTT COUNTY, MINNESOTA

| MICHAEL MAHANEY | VS CONDAIR, INC. | |
|---|---|---|
| PLAINTIFF/PETITIONER | DEFENDANT/RESPONDENT | CASE NUMBER |

KEVIN S. DUNN being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 08/11/2020

**Service:** I served CONDAIR, INC.
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT WITH JURY DEMAND; LETTER DATED AUGUST 10, 2020

by leaving with LYNANNE GARES — MANAGING AGENT At

- [ ] Residence
- [X] Business C/O THE COMPANY CORPORATION, 251 LITTLE FALLS DR., WILMINGTON, DE 19808

On 08/11/2020 AT 1:45 PM

Thereafter copies of the documents were mailed by prepaid, first class mail on _____

from _____

**Manner of Service:**
[X] CORPORATE
- [ ] **Personal:** By personally delivering copies to the person being served.
- [ ] **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of ____ and explaining the general nature of the papers.
- [ ] **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
- [ ] **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

- [ ] Unknown at Address  
- [ ] Moved, Left no Forwarding  
- [ ] Service Canceled by Litigant  
- [ ] Unable to Serve in Timely Fashion
- [ ] Address Does Not Exist  
- [ ] Other _____

**Service Attempts:** Service was attempted on: (1) ___ (2) ___ (3) ___ (4) ___ (5) ___

Age 45  Sex FEMALE  Race WHITE  Height 5'5  Weight 180  HAIR BROWN

SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 11TH day of AUGUST, 2020.

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of DELAWARE

NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS